SCHWARTZ, Appellant,

v.

COMCORP, INC., d.b.a. Sun Newspapers, et al., Appellees.

[Cite as *Schwartz v. Comcorp, Inc.* (1993), 91 Ohio App.3d 639.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63479.

Decided Jan. 14, 1993.

*Kramer & Tobocman Co., L.P.A.,* and *Suzanne M. Nigro,* for appellant.

*Duvin, Cahn & Barnard, Robert Wolff* and *Lisa Mann,* for appellee Comcorp, Inc.

---

*Per Curiam.*

Plaintiff–appellant, Howard Schwartz ("appellant"), timely appeals the trial court's decision to grant summary judgment in favor of defendant-appellee, Comcorp, Incorporated, d.b.a. Sun Newspapers ("appellee"). Having reviewed the legal arguments of the parties in conjunction with the record, we affirm the decision of the trial court.

Appellee is a print media concern that markets several smaller local-type newspapers in the greater Cleveland area. Appellant was employed with appellee from December 10, 1975 until his resignation in July 1989. Appellant began his career with appellee as a sales representative. Appellant held a number of positions with appellee and was, eventually, promoted to the position of regional

sales manager. His job caused him to be involved with the direction of the regional sales staff as well as involvement in such personnel matters as hiring and termination of employees. As part of his duties, appellant was responsible for selecting applicants for interviews and recommending the possible candidates for jobs.

Appellant acknowledged that when he was hired he was given an employee handbook that contained general policy statements of appellee with respect to benefits, rules, and policies. Appellant also admits that he reviewed the publication carefully and understood that the contents of the book were not to be construed to create a contractual agreement between appellee and him or for that matter any of the employees. Nevertheless, based upon his confidence in the handbook and his own sense of fairness, appellant concluded that all employees should be treated fairly in accordance with a section of the handbook titled "Procedures for Handling Complaints and Problems."

In 1986, appellant advised appellee that he had diabetes. By January 1989 appellee was aware that appellant's condition would sometimes cause him problems. In mid-1988, appellant received a performance evaluation from his supervisor who gave him a positive evaluation.

A pivotal year to this case was 1988. Appellee had operated at a financial loss for the years 1987, 1988 and 1989. In 1988, a severe shortfall of advertising revenue occurred; during this period appellant was the regional sales department manager. In fact, with the exception of the 1987 year, appellant was never successful at reaching his sales quota. In March 1988, management was acutely aware of appellant's department's failure to meet its monthly sales quota. By the end of 1988, appellant's regional sales department was approximately twenty-five percent below its projected revenues, which totaled a shortfall of approximately $640,000.

Appellee takes the position that the shortfall in advertising revenue was so severe in 1988 that it decided to restructure the regional advertising department. A decision was also made to hire a new vice president of marketing named Lute Harmon, who was a year younger than appellant. In December 1988, appellant was removed from his position of regional sales department manager and Harmon assumed the managerial responsibilities associated with that department. Dominic Di Pasqua became a working supervisor. Appellant's former boss, Shull, was terminated during the same period of appellant's demotion. Di Pasqua's job responsibilities were different from those of appellant. Di Pasqua was given a specific list of accounts to service, was not a member of management or eligible for management incentives, was unable to attend managerial meetings, and was not treated in any other way as a member of the management team.

After these changes, the quota for the regional sales was increased in 1989. The regional sales department exceeded its quota after appellant's removal.

A number of other employees were transferred or removed from positions as a consequence of the tough economic times that appellee experienced. Furthermore, appellee cited what it believed were objective reasons for appellant's change in circumstances. According to appellee, appellant failed to meet his quota in 1988, which he participated in establishing as did all of appellee's sales managers. Paul Massey had previously informed appellant that he would not accept a figure less than last year's sales.

Appellant took the position that his demotion and ultimate resignation were the result of various forms of discrimination on the part of appellee. Appellant asserted that he had every reason to expect that he would be permitted to continue in the position of regional sales manager because of his performance evaluation, knowledge of the handbook procedures, and other verbal comments about his abilities. It was determined that a number of people over forty years of age were terminated. Appellant took the position that by January 1989, the stress and harassment of his work environment affected his emotional and physical health. Appellant resigned effective July 11, 1989, and charged that the hostility and discrimination on the job prompted his decision to resign.

Appellant filed charges of age and religious discrimination with the Equal Employment Opportunity Commission in January 1990. He received a right to sue on his religious discrimination claim. Appellant notified the commission of his intention to pursue the claims in court. Consequently, in April 1990, appellant filed a complaint in the Cuyahoga County Common Pleas Court. The complaint alleged age, handicap, and religious discrimination, which were all state statutory causes of action. In addition, the complaint raised common-law claims of wrongful and constructive termination of employment. The trial court granted summary judgment.

Appellant asserts two assignments of error in support of this appeal.

Assignment of error one states:

"The lower court erred when it granted appellees' motion for summary judgment on all of appellant's claims."

This assignment of error raises the issue of whether there is no genuine issue as to any material fact, and if appellee is entitled to judgment as a matter of law. Furthermore, the question must also be asked whether it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to appellant, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C).

Appellant puts forth two arguments in support of his proposition that the trial court erred in deciding that his claim of forced discharge was not a matter for the jury's contemplation. The first argument is that appellant's evidence on foreseeability and intolerable working conditions was sufficient as a matter of law to create a jury issue on the question of constructive discharge. The second argument is that the case law on constructive discharge cited by appellee was erroneously relied on by the trial court. Appellant asserts that he demonstrated that his conditions of employment were intolerable and that it was foreseeable on the part of appellee that he would have to quit.

Appellant bears the burden of producing evidence that a reasonable person would find his working conditions so intolerable that he would voluntarily resign. The test is not a subjective one but rather a reasonable one. *Murray v. Sears, Roebuck & Co.* (N.D.Ohio 1989), 722 F.Supp. 1500, 1506. In this regard, appellant alleges that appellee had knowledge of the on-the-job stress that he was experiencing as a result of appellee's hostilities. Also, appellant asserts that after a promise that he would always be in management, knowledge of the detrimental reaction of his first demotion, and appellant's rational expectations, appellee should have known that his forced resignation was logical and necessary under the circumstances.

The record reflects that appellant offered evidence which, he asserts, was sufficient to establish a constructive discharge that should have been foreseeable by appellee. Appellant established that he had received good reviews and bonus payments up to and through October 1988. The evidence also established that he was a diabetic and often experienced adverse symptoms from his illness. Appellant further cites his removal from management and two demotions despite promises to the contrary by appellee. As additional evidence of his alleged constructive discharge, appellant argues that a specific management employee placed his desk in a hallway, made disparaging and demeaning comments to him and figured a restructuring that really only involved appellant and his demotion. Appellant contends that all of these factors combined for sufficient evidence to give the issue of constructive discharge to a jury, rendering the granting of summary judgment erroneous.

The principal objective argument of appellant is his removal from management. The other arguments, as appellee suggests, are subjective in nature (*i.e.* placing his desk in a hallway, disparaging and demeaning comments, etc.). It is clear from the record in this case that appellee was under severe financial strain. Appellee had operated at a financial loss during the years of 1987, 1988 and 1989. In 1988, advertising revenue had a serious downturn causing appellee grave financial problems. Appellee was quite concerned about appellant's inability to meet his department's sales quota and at the end of 1988 the department missed

its forecasted budget by approximately $640,000. Even with these problems in 1988, appellant's former department was given a higher quota in 1989 which was exceeded after appellant's departure.

In the backdrop of the cases presented by appellee and these objective factors for appellant's demotion, this court is not in a position to hold that the trial court abused its discretion in determining that as a matter of law there was no genuine issue as to any material fact with respect to appellant's allegations of constructive discharge. Appellant relies on subjective assertions in an effort to present evidence of intolerable working conditions which could have foreseeably resulted in appellant's resignation. *Wilson v. Firestone Tire & Rubber Co.* (C.A.6, 1991), 932 F.2d 510, 515; *Truzzi v. Shell Oil Co.* (C.A.6, 1988), 857 F.2d 1475; and *South v. Toledo Edison Co.* (1986), 32 Ohio App.3d 24, 513 N.E.2d 800, are the cases that appellant suggests were improperly relied on by appellee and the trial court; however, we find that these cases do, in fact, substantiate the trial court's decision to grant summary judgment.

Thus, appellant's first assignment of error is overruled.

Appellant's second assignment of error states:

"The lower court erred when granting appellee's motion for summary judgment on appellant's claims of intentional infliction of emotional distress, breach of implied contract, age and handicap discrimination, and the breach of public policy."

Appellant asserts five sub-arguments in support of this assigned error. This court will address the sub-issues in the same order as appellant argues them.

"A. The trial court erred in concluding that workers' compensation statutes preclude civil claims for intentional infliction of emotional distress."

Appellant takes the position in support of this argument that he presented sufficient evidence that appellee's conduct was indecent and extreme and that it proximately caused appellant's emotional distress. Appellant suggests that such conduct by appellee was tantamount to an intentional tort and as such it was outside the employment relationship and is not preempted by the workers' compensation statutory provisions.

■ In support of this argument, appellant relies on *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, which held that all intentional torts by employers, even those causing physical injuries covered by workers' compensation, are outside the employment relationship for purposes of preemption. Also, an employee can state a claim for emotional distress in a wrongful discharge action when the proximate cause of the emotional distress is not limited

to the mere fact of discharge. *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 570 N.E.2d 1076.

■ In order for a plaintiff to recover or even present a jury question in a claim for emotional distress, the plaintiff must present sufficient evidence to create a genuine issue of any material fact as to the defendant's behavior. In Ohio, the behavior as a matter of law must be indecent and extreme. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119–120, 451 N.E.2d 759, 765–766. In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, the Ohio Supreme Court characterizes the requisite behavior as " 'go[ing] beyond all possible bounds of decency, * * * to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 375, 6 OBR at 426–427, 453 N.E.2d at 671.

■ In the instant case, the trial court did not abuse its discretion in granting summary judgment as to the appellant's claim of emotional distress. Appellant failed to present evidence that was sufficient to create a genuine issue as to the material fact of appellee's behavior being extreme or outrageous. Appellee made decisions which, based on the evidence, were directly related to the financial health of the company. The incidents and comments which appellant uses to try and substantiate his claim are predominately disparaging remarks and complaints about his work environment as well as his discharge, which *Paugh* and *Yeager* establish are not tantamount to extreme and outrageous conduct on the part of appellee.

It was not an abuse of discretion for the trial court to conclude as a matter of law that this evidence was insufficient to create a genuine issue of material fact as to a claim of emotional distress.

"B. Appellant's affidavits, deposition testimony, and other documentary evidence were sufficient to raise genuine issues of material fact as to whether reliance upon oral promises, performance evaluations and policies of the appellees were justified and acted to alter the at-will status."

■ In arguing this sub-issue, appellant takes the position that his detrimental reliance on verbal assurances, performance evaluations, and the stated policies of appellee was sufficient as a matter of law to alter his at-will status.

■ Indeed, the Ohio Supreme Court has held that standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship. A demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine. *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, at paragraph three of the syllabus.

Furthermore, for the theory of an implied contract exception to the employment-at-will doctrine to apply there must be a meeting of the minds between the parties as to the underlying terms that concern a discharge. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150.

It was not an abuse of discretion for the trial court to grant summary judgment on appellant's claim that his detrimental reliance altered his employment-at-will status. Appellant's own testimony demonstrates that he relied on his evaluations of his job performance and not specific assurances of job security from his superiors. When asked if there were any other facts upon which he relied to conclude that his job was secure, he testified that he had gotten consistently good feedback from his superiors. *Helmick, supra,* establishes that such praise alone is insufficient as a matter of law to alter the employment-at-will status. Appellant relies on the Massey affidavit to suggest that he was given specific assurances of job security. Nevertheless, appellant's own testimony establishes that he did not rely on those specific assurances even if appellant's interpretation of Massey's testimony is accepted as accurate. Lastly, the employee handbook expressly disclaims any intent to create a binding contract between appellant and appellee.

"C. Trial court erroneously decided that Appellant's act of filing a charge with the Equal Employment Opportunity Commission precludes him from filing a civil suit in state court for age discrimination.

"1. Trial court's application of strict prima facie case analysis was clearly erroneous as Appellant provided adequate evidence showing that he was replaced by a younger worker."

Appellant asserts that Ohio Adm.Code Chapter 4112 does not invoke the jurisdiction of the Ohio Civil Rights Commission because the original federal agency with which the charge was filed referred the claim to the commission. Second, appellant takes the position that he did provide adequate evidence showing that he was replaced by a younger worker.

Ohio Adm.Code 4112–3–01(D) states in pertinent part:

" * * * A charge filed with the equal employment opportunity commission (EEOC) * * * is deemed filed with the Ohio civil rights commission on the date it is received * * *."

Appellant acknowledges that he filed an age discrimination claim with the Equal Employment Opportunity Commission. Therefore, pursuant to Ohio Adm. Code 4112–3–01(D), the claim was likewise filed with the Ohio Civil Rights Commission. This filing precluded appellant from pursuing a private right of action under R.C. 4112.99. *Pozzobon v. Parts for Plastics, Inc.* (N.D.Ohio 1991), 770 F.Supp. 376.

■ The *prima facie* elements of age discrimination are that the plaintiff is over forty years old, discharged, qualified for the position which he held, and replaced by a younger worker. If plaintiff establishes these four essential elements, the burden shifts to the defendant to articulate a nondiscriminatory reason for the action taken. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 146, 451 N.E.2d 807.

The trial court did not abuse its discretion as to the claim of age discrimination. Appellant was statutorily precluded from asserting an age discrimination claim pursuant to R.C. Chapter 4112 because of his filing with the Ohio Civil Rights Commission. Second, appellant has not presented sufficient evidence that he was replaced at all after his job was eliminated and for this reason his claim fails.

"D. Appellant presented sufficient evidence of Appellees' intent to discriminate on the basis of handicap to survive a motion for summary judgment."

■ The record in this case fails to establish that appellee's actions were in any way related to his diabetic condition. In fact, the record seems to indicate that appellee was indeed accommodating to appellant as it relates to his diabetic condition. The trial court did not abuse its discretion in the granting of summary judgment as it relates to appellant's handicap discrimination claim.

"E. Appellant's discharge violates Ohio statutes providing him with additional remedies in tort for breach of public policy."

■ *Greeley v. Miami Valley Maintenance Contrs. Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, does not apply to situations where the statute containing the public policy which was allegedly violated contains within its provisions a specific civil legal remedy for its violation. Thus, appellant's public policy claim cannot survive summary judgment.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Nahra, P.J., James D. Sweeney and Patricia A. Blackmon, JJ., concur.