McNEIL, Exr., Appellant,

v.

CASE WESTERN RESERVE UNIVERSITY, Appellee.

[Cite as *McNeil v. Case W. Res. Univ.* (1995), 105 Ohio App.3d 588.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67651.

Decided Aug. 7, 1995.

*Kramer & Niermann, Edward G. Kramer* and *Timothy R. Obringer,* for appellant.

*Buckley, King & Bluso, Rosemary Disanto, Thomas S. Amato, Rosemary G. Gold* and *Harold R. Rauzi; Kelley, McCann & Livingstone, Joel A. Makee* and *Kurt D. Weaver,* for appellee.

---

PATTON, Chief Judge.

Defendant Case Western Reserve University ("CWRU") employed decedent Willie Mae McNeil in its maintenance department from 1967 to the date of her death on December 13, 1990. Her estate, through executor Theresa McNeil, filed this action against CWRU and four of its employees, alleging that over a period of five years, defendants intentionally engaged in a series of acts intended to force the seventy-one-year-old McNeil to retire. The complaint further alleged these acts ultimately caused McNeil to suffer a fatal heart attack on CWRU's premises. The complaint alleged defendants intentionally inflicted emotional distress on McNeil.[1] The trial court granted defendants' motion for summary

---

1. The complaint also appeared to set forth claims of assault and battery, negligent infliction of emotional distress, negligent hiring, negligence in failing to provide a safe workplace, and age discrimination. However, in its brief in opposition to the motion for summary judgment, the estate claimed, "[p]laintiff has not alleged any Non–Intentional Tort Claims * * *." It therefore did not address defendants' arguments concerning the application of the Workers' Compensation Act's exclusivity provisions. In addition, it stated it had "not alleged any claim for assault and battery or age discrimination * * *." For purposes of this appeal, the estate argues the summary judgment only as to the claim of intentional infliction of emotional distress.

judgment, finding the estate failed to present evidence on issues for which it bore the burden of production at trial.

The issues raised in this appeal are whether the trial court misapplied the applicable law relating to the estate's burden in opposing the motion, whether the court disregarded admissible evidence and whether it incorrectly granted summary judgment.

Under Civ.R. 56(C), summary judgment is proper "if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment always bears the initial responsibility of informing the trial court of the basis for its motion and identifying those evidentiary materials which it believes demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274. Although the moving party does not have to support the motion for summary judgment with evidentiary materials, it does bear the initial burden of establishing that the material facts are not in dispute and there is no genuine issue of material fact. *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108, 1113–1114.

Civ.R. 56(E) requires the nonmoving party to respond to a properly supported motion for summary judgment and set forth specific facts showing that there is a genuine issue for trial. The nonmoving party must produce evidence on any issue for which it bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

The trial court granted summary judgment for defendants, finding that defendants' motion had forced the estate to produce evidence on issues for which it had the burden of production at trial, and that the estate had failed to produce that evidence as required by *Wing*. The estate argues that the trial court inappropriately applied the *Wing* standard because defendants failed to meet their initial burden to present sufficient evidence in support of the motion for summary judgment.

Before addressing the merits of this argument, we must address the estate's contentions that the trial court failed to consider all of the evidence presented by the estate in its opposition to the motion for summary judgment and that it erred by excluding statements by McNeil which fall within the hearsay exceptions of Evid.R. 804(B)(5).

Nothing in the record supports these contentions. The trial court did not issue any evidentiary rulings, nor were the subject hearsay statements the object of a motion to strike or any other motion. The estate's argument appears to be grounded on the idea that the evidence it submitted in opposition to the motion for summary judgment is so compelling that the trial court could only have granted defendants' motion if it disregarded the estate's evidence.

Our review is limited to what transpired in the trial court as reflected by the record of proceedings. *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 109, 554 N.E.2d 1313, 1314–1315. Consequently, App.R. 12(A) requires a party to specifically point out errors in the record. Although the estate has failed to do this, we note the trial court has a mandatory duty to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138, syllabus. In the absence of a record which affirmatively shows otherwise, we must presume the trial court did review all the evidence.

A plaintiff who alleges the tort of intentional infliction of emotional distress charges that the defendant, by extreme and outrageous conduct, has intentionally or recklessly caused serious emotional distress to him and is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus. In order to defeat a motion for summary judgment on a claim of intentional infliction of emotional distress, a party must present sufficient evidence to create a genuine issue of material fact as to the defendant's behavior and the severity of the injury suffered. *Schwartz v. Comcorp, Inc.* (1993), 91 Ohio App.3d 639, 646, 633 N.E.2d 551, 555–556.

The behavior complained of must be indecent and extreme. *Id.,* citing *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119–120, 451 N.E.2d 759, 765–766. The Supreme Court has described the requisite behavior as " 'go[ing] beyond all possible bounds of decency, * * * to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Yeager, supra,* 6 Ohio St.3d at 375, 6 OBR at 426, 453 N.E.2d at 671. The resulting emotional distress from the behavior must be so serious that a "reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances * * *." *Paugh, supra,* at paragraph 3a of the syllabus. In the context of an employer intentional tort, the estate must then show that defendants engaged in a course of conduct with knowledge that McNeil's injuries were certain or substantially certain to occur, and that despite that knowledge, the defendants still proceeded with that course of conduct. *Fyffe, supra,* at paragraph two of the syllabus.

■ We need not reach the issue of intent, however, because the estate has failed to produce evidence on the issues of outrageous conduct and resulting emotional distress, elements of the tort of intentional infliction of emotional distress and issues for which it bore the burden of production at trial.

In its response to the motion for summary judgment, the estate submitted affidavits from McNeil's son and daughter. The siblings set forth the following allegations of harassment:

"1. McNeil's supervisors were harassing her to retire;

"2. When the daughter picked up McNeil's paycheck one of the defendant-employees mentioned he had asked McNeil to retire and urged the daughter to persuade McNeil to retire;

"3. After McNeil had returned to work following several days off, some of her co-employees commented they thought she had retired;

"4. A fellow employee threatened to assault McNeil; and

"5. McNeil believed she had been intentionally locked out of the room in which she kept her personal belongings."

■ A plaintiff cannot rely on unspecific allegations of "harassment" in order to defeat a motion for summary judgment. When a motion for summary judgment is made and supported as provided for in Civ.R. 56(C), the nonmoving party "must set forth *specific* facts showing that there is a genuine issue for trial." (Emphasis added.) Civ.R. 56(E); *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

Even were we to find these allegations sufficient for purposes of Civ.R. 56(E), only one of them, the allegation that a co-worker physically threatened McNeil, arguably rises to the level of outrageous behavior sufficient for a finding of intentional infliction of emotional distress. Evidence submitted by the estate, however, completely contradicted the allegation that CWRU condoned physical threats by the co-worker or sided with him in his dispute with McNeil.

The estate submitted a letter from CWRU's manager of human resources documenting a meeting between McNeil, the co-worker and supervisory staff. The letter indicates that the co-worker mopped floors. He was upset with McNeil because she took too long to finish cleaning, and when she did finish cleaning, she rolled her cleaning cart across the floor before it had dried. McNeil claimed that the co-worker confronted and threatened her.

A supervisor noted that McNeil often used abusive language towards her co-workers and had been cursing and yelling at the co-worker during the argument in question. In order to remedy the situation, the supervisors adopted a work schedule designed to place McNeil and the co-worker at different parts of the

building during their shifts. The supervisors also warned both parties that "the use of profane and threatening language is unacceptable behavior in the workplace and will not be condoned. Any future violations of this nature will result in suspension."

As this letter demonstrates, defendants did not engage in outrageous behavior. Quite the contrary, it appears that they took necessary steps to end the confrontations McNeil started. At best, the estate showed disparaging remarks and complaints about McNeil's work. These remarks and complaints are not tantamount to extreme or outrageous conduct on defendants' part. *Schwartz v. Comcorp, Inc., supra,* 91 Ohio App.3d at 646, 633 N.E.2d at 555–556.

We also find that the estate failed to present evidence of severe emotional distress resulting from the alleged harassment. At best, the affidavits showed that McNeil was "upset," "angry," and had "feelings of distress, anxiety and fear." None of these complaints is sufficient to rise to the level necessary to constitute the type of serious emotional injury contemplated by the tort of intentional infliction of emotional distress. *Putka v. First Catholic Slovak Union* (1991), 75 Ohio App.3d 741, 751, 600 N.E.2d 797, 803–804.

Even were we to find the above complaints sufficient to satisfy the element of outrageous behavior, we would find that that behavior did not result in serious stress. Serious emotional stress describes emotional injury which is both severe and debilitating. *Paugh, supra.* Although the complaint alleged that the stress continued for a period of five years, McNeil did continue to work without any interruptions caused by stress. In fact, the unrebutted evidence shows that moments before she suffered her heart attack, McNeil spoke with one of the defendant-employees. That employee stated McNeil "appeared to be calm and in good spirits. There was no indication whatsoever she had had any sort of confrontation with anyone." Another defendant-employee stated that McNeil appeared to be in a good mood and did not appear emotionally distressed on the day of her death.

The estate's medical expert submitted a report and concluded, to a reasonable degree of medical certainty, that the psychological stresses detailed in the estate's answers to interrogatories, precipitated McNeil's death. The expert did state, however, that "McNeil was at high risk for sudden cardiac death secondary to hypertensive heart disease, severe 3–vessel coronary artery disease, and an old posterior wall myocardial infarction." The coroner listed McNeil's cause of death as "hyperintensive coronary sclerotic heart disease with remote myocardial infarct."

Significantly, the expert did not specifically tie the outrageousness of the alleged acts of harassment to McNeil's death. He simply concluded that "psycho-

social stress has been implicated in the provocation of ventricular arrhythmias and sudden death. All these factors were multi-factorial in the cause of Ms. McNeil's demise." Although defendants' acts may have caused McNeil stress, there is no indication that the stress alone caused her death.

It follows that the estate, as a matter of law, has failed to establish a claim of intentional infliction of emotional distress. The trial court did not err by granting summary judgment. The assignments of error are overruled.

*Judgment affirmed.*

MATIA, J., concurs.

KARPINSKI, J., dissents.

KARPINSKI, Judge, dissenting.

I respectfully dissent from the majority's decision regarding plaintiff's claim for intentional infliction of emotional distress, because plaintiff met its burden of establishing the essential elements of a *prima facie* case.

First, plaintiff has alleged that defendant had a written policy of terminating employees at age seventy and never revoked this policy. Defendant has not denied that it adopted such a policy. Nor has defendant denied that it never officially revoked this written policy, which was in clear violation of the law since 1987.[1] For a university to retain in its formal personnel manual a policy in violation of the law for years is evidence of outrageous behavior to every employee including McNeil.

In addition, plaintiff has, in affidavit form, made specific allegations concerning harassment by co-workers and supervisors at work. This harassment was in the form of threats of violence and statements urging McNeil to retire. Her son stated that because of such threats, he had to pick up his mother each night from work. Even in today's hardened society, threatening an elderly woman with violence is outrageous. Additionally, affidavits allege McNeil's supervisors repeatedly urged her to retire. Defendant's witnesses deny these claims, and defendant has offered alternative explanations of the circumstances detailed by plaintiff regarding the threat of violence. Plaintiff, however, is not required to rebut those alternative explanations or to bear the burden of persuasion regarding the threats or admonitions to retire. Taken as a whole, plaintiff has presented a prima facie case of age discrimination which meets the test of outrageous behavior under an intentional tort. The resolution of this factual dispute is a matter for the jury to decide.

---

**1.** Defendant claims, rather, that it never implemented such a policy, although defendant provides no evidence that its supervisory staff were instructed to reject the written policy.

Second, I am not persuaded that the defendant has shown there is no question of fact as to whether McNeil suffered severe emotional distress from the alleged outrageous behavior. The majority concedes that "defendant's acts may have caused McNeil stress." More crucial, however, is that McNeil's doctor met the threshold test for this case. Plaintiff's expert concluded to a reasonable degree of medical certainty that the psychological stress McNeil experienced at work, as described in her daughter's answers to interrogatories, precipitated her death.

I appreciate that plaintiff will have considerable difficulty bearing the burden of persuasion linking the general stresses McNeil's children reported, and which the doctor relied upon, to the immediate cause of her death. To deny proximate cause on this basis, however, would require testimony from an expert stating that her death could not result from those general stressors. The defense, however, did not provide any expert's opinion to contradict plaintiff's. The unchallenged testimony of plaintiff's expert thus provides sufficient evidence of causation for a prima facie case of intentional tort. His credibility is not a matter for this court to determine. Rather, this court must decide defendants' motion for summary judgment by viewing the evidence in a light most favorable to the nonmoving party. Moreover, tort law does not require that defendant's actions be the *only cause* of McNeil's death. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828.

Convinced that plaintiff has established the elements of a claim of intentional infliction of emotional distress sufficient to defeat a motion for summary judgment, I would reverse the trial court's decision granting summary judgment in favor of the defendant.