OPINION
Plaintiff, Garry E. Clark, appeals the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants, City of Dublin ("Dublin"), Dublin City Manager Timothy Hansley ("Hansley"), Dublin Assistant City Engineer Randy Bowman ("Bowman"), and Dublin City Engineer Balbir Kindra ("Kindra").
On September 24, 1998, plaintiff, an employee of Dublin, filed a complaint against defendants alleging due process and equal protection violations pursuant to Sections 1981, 1983 and 1988, Title 42, U.S. Code and gender and age discrimination claims pursuant to R.C. 4112.02.
On April 20, 1999, plaintiff amended his complaint to include a gender discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code ("Title VII") and an age discrimination claim pursuant to the Age Discrimination in Employment Act, Section 621 et seq., Title 29, U.S. Code ("ADEA"). Plaintiff further averred that he had "complied with the prerequisites of Title VII" by filing a charge of age and gender discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On November 20, 1998, the EEOC dismissed plaintiff's charge and gave him notice of his right to file a lawsuit under federal law in either state or federal court.
On July 27, 1999, defendants filed a motion for summary judgment. On March 17, 2000, plaintiff filed a second amended complaint to include state law claims for handicap[1] discrimination and retaliatory conduct pursuant to R.C. 4112.02(A) and (I), respectively. Defendants filed a supplemental motion for summary judgment on January 26, 2001, to address the claims raised in plaintiff's second amended complaint. By decision and entry filed March 20, 2001, the trial court granted both of defendants' motions. Plaintiff has appealed, assigning one error for our review:
 The trial court erred in granting summary judgment to the defendant-appellee. There are genuine issues of material fact in plaintiff-appellant's case that the trial court refused to recognize.
The pleadings, depositions, affidavits and exhibits before the trial court in the summary judgment proceeding reveal that plaintiff began working for Dublin in 1979 as an engineering project inspector. Over the next ten years, plaintiff's duties expanded from strictly residential inspection to infrastructure inspection of residential areas. In 1989, plaintiff was promoted to chief engineering inspector, a position which included supervisory responsibilities over five engineering project inspectors. Beginning in 1992, plaintiff reported to Bowman, who reported to Kindra. Plaintiff acted as chief engineering inspector until December 1993. At that time, plaintiff was informed by Kindra that he was being reassigned to serve as an assistant to Bowman and Kindra, with no supervisory responsibilities over the project engineers. While working in this capacity, plaintiff's duties included maintaining engineering records, assisting department engineers (including acting as a liaison between the engineers and the project inspectors), and providing customer service to the general public and contractors regarding ongoing construction projects. Although plaintiff's job duties changed from those he performed as chief engineering inspector, he maintained the same title and salary. Over the next year, plaintiff repeatedly asked Bowman to provide him with a job description reflecting the job duties he currently performed. Bowman never complied with plaintiff's request; however, he assured plaintiff that he would be "take[n] care of * * *." (Plaintiff's affidavit attached to his memorandum contra defendants' motion for summary judgment, at 3; plaintiff's depo. at 51.) Plaintiff interpreted Bowman's statement as a promise that plaintiff would eventually be placed in a supervisory position similar to the one he held as chief engineering inspector.
In 1995, Dublin hired an outside consulting firm to review its job classification and compensation structure. As part of the reclassification process, each employee completed a questionnaire detailing his or her background and current job duties and responsibilities. The consultant then met individually with each employee to explain the reclassification process and discuss the information included in the questionnaire. Based upon an analysis of the information provided in the questionnaires and the results of the personal interviews, the consultant developed new job classifications. The draft job classifications were then forwarded to each department head, who reviewed them with each employee. Upon completion of the reclassification process, the consultant proposed pay grades for each job classification. Each employee was notified of the proposed job reclassification and pay grade and was given an opportunity to meet with the consultant to discuss problems and/or to appeal either the reclassification or the pay grade.
Plaintiff met with the consultant on three separate occasions to discuss his background and current job duties. After analyzing plaintiff's background, current job duties, and level of responsibility, the consultant determined that plaintiff's position as chief engineering inspector should be abolished and reclassified as an engineering assistant and placed in pay grade 4. The proposed salary range for pay grade 4 was set at $24,255 to $36,383. The engineering project inspector position retained its title and was placed in pay grade 5. The five people who retained the title and salary of project inspector were those whom plaintiff had supervised when he held the chief engineering supervisor position. At the time, four of the five project inspectors were under the age of forty; plaintiff was fifty-three years old. The proposed salary range for pay grade 5 was set at $26,465 to $39,698.
Because plaintiff's current salary of $40,906 exceeded the maximum for pay grade 4, his salary was "red-lined," i.e., would not be reduced, but he was no longer eligible for merit increases within pay grade 4. He remained eligible, however, for annual longevity increases. Further, if, over time, the salary range for pay grade 4 shifted upward so that the maximum salary exceeded $40,906, plaintiff would again become eligible for merit increases. Plaintiff unsuccessfully appealed his reclassification to pay grade 4. The consulting firm presented its final draft of the job classification and compensation study in September 1996. On November 4, 1996, Dublin City Council passed an ordinance adopting the new job classification and compensation structure as recommended by the consulting firm. The ordinance became effective on December 6, 1996.
On February 25 and 26, 1998, plaintiff reported off work due to illness. When plaintiff returned to work on February 27, 1998, he completed a "Leave Request Form," requesting payment for sixteen hours out of his accumulated 186.13 hours of sick leave. Plaintiff designated "Neuralgia" as the reason for his absence from work. Bowman requested that plaintiff provide certification from plaintiff's physician verifying his illness. Plaintiff refused to provide the medical certification because he did not think it was necessary to do so under his interpretation of Dublin's sick leave policy. Due to plaintiff's failure to provide the certification, the sick leave request was denied. Plaintiff declined the opportunity to charge his absence to another form of paid leave, i.e., vacation leave, compensatory time, or personal leave, choosing instead to go unpaid for the sixteen hours of work missed.
In March 1998, plaintiff obtained from a female employee a copy of a request she made seeking payment for more than three days of sick leave. The female employee's request for sick leave was approved despite the absence of attached medical certification.
Thereafter, plaintiff apparently retained counsel, who inquired as to the reason for the disapproval of plaintiff's February 25 and 26, 1998 sick leave requests. By letter dated April 6, 1998, Hansley explained that plaintiff's request had been disapproved due to plaintiff's refusal to provide a physician's certificate verifying his illness and the necessity for utilizing sick leave. In support of the decision to disapprove plaintiff's request, Hansley referenced Dublin's sick leave policy, which, according to Hansley, permits a supervisor, prior to approving a sick leave request, to require a physician's certificate when the supervisor believes that the employee has abused sick leave. Hansley noted that due to plaintiff's "excessive absenteeism" over the previous two years, plaintiff had been informed that any request to utilize sick leave would require a physician's certificate justifying the necessity for such usage. Hansley concluded that plaintiff's poor attendance record over the previous two years provided plaintiff's supervisor a reasonable basis to believe that plaintiff had been abusing sick leave, which, in turn, gave the supervisor a reasonable basis for requiring that plaintiff provide a physician's certificate.
On August 26, 1998, plaintiff again reported off work due to illness. Upon his return to work on August 27, 1998, he requested payment for eight hours out of his accumulated sick leave. Bowman requested a physician's certification of plaintiff's illness prior to approving the use of sick leave. Plaintiff provided a document containing only the date of plaintiff's illness, a return date of August 27, 1998, and the stamped signature of plaintiff's physician. Bowman rejected the document because it did not contain any explanation of plaintiff's illness. Bowman gave plaintiff the opportunity to submit additional appropriate documentation. When plaintiff refused to comply, Bowman disapproved plaintiff's sick leave request.
Initially, we note the case was decided by summary judgment. Civ.R. 56(C) provides that summary judgment is proper if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, demonstrate that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion. Morris v. Ohio Casualty Ins. Co. (1988), 35 Ohio St.3d 45, 47. Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. Norris v. Ohio Standard Oil Co. (1982),70 Ohio St.2d 1, 2. Summary judgment must be awarded with caution, resolving all doubts in favor of the party opposing the motion.
The burden of establishing that no genuine issues of any material fact remain to be litigated is on the party moving for summary judgment. Turner v. Turner (1993), 67 Ohio St.3d 337, 340. Once a party moves for summary judgment and has supported his or her motion by sufficient and acceptable evidence, the party opposing the motion has a reciprocal burden to respond by affidavit or as otherwise provided in Civ.R. 56(C), setting forth specific facts explaining that a genuine issue of material fact exists for trial. Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52. A motion for summary judgment forces the nonmoving party to produce evidence on all issues for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus. (Celotex v. Catrett [1986], 477 U.S. 317, approved and followed.)
We first address plaintiff's Section 1983 claims.[2] Section 1983 provides a remedy to persons whose federal rights have been violated by government officials. 1946 St. Clair Corp. v. Cleveland (1990),49 Ohio St.3d 33, 34. In order to maintain a Section 1983 action,[3] a plaintiff must establish that: "(1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. A plaintiff may seek redress against a governmental entity, e.g., a municipality, pursuant to Section 1983. Miller v. Leesburg (Dec. 1, 1998), Franklin App. No. 97APE10-1379, unreported, citing Monell v. Dept. of Soc. Serv. (1978), 436 U.S. 658, 689, 690. However, municipal liability may not rest solely on the doctrine of respondeat superior. Miller, supra. Rather, to impose Section 1983 liability on a municipality, a plaintiff must demonstrate that an established practice, policy, or custom of the municipality was the "moving force" behind the constitutional violation. Id., citing Polk County v. Dodson (1981),454 U.S. 312, 326. Thus, a plaintiff must set forth facts demonstrating the existence of an offending policy or custom, and mere conclusory allegations are not enough. Dennis v. Toledo Police Dept. (Mar. 12, 1991), Lucas App. No. L-90-157, unreported. As noted by this court in Miller
 * * * A government policy is made when a decision-maker possessing final authority to establish municipal policy regarding the action in question issues a proclamation, rule, or edict. * * * A government custom exists where government employees engage in a practice which, although not expressly authorized, is so persistent or widespread that it can be said that the government's policy making officials had either actual or constructive notice of the practice, but failed with "deliberate indifference" to correct the practice. [Id. at 6.]
In addition, in a case where a government employee is sued in his or her official capacity only, the claim is to be treated as being against the governmental entity of which the employee is an agent. Dennis, supra, citing Kentucky v. Graham (1985), 473 U.S. 159, 165.
Accordingly, in a Section 1983 action, a plaintiff who names an employee in his or her official capacity is seeking recovery only from the governmental entity itself and is not attempting to establish the personal liability of the employee. Id. Although plaintiff's complaint states that Bowman, Hansley and Kindra are "sued in their individual capacities" (second amended complaint, paragraph 8), the complaint describes them in their official capacities only. Therefore, for purposes of this appeal, plaintiff's alleged civil rights action shall be considered as being against only the governmental entity (Dublin) named as a defendant in the instant action.
Plaintiff alleges that he was denied equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment").[4] The Equal Protection Clause of theFourteenth Amendment states that no state shall deny to any person the equal protection of the laws. It prevents a state from treating people differently under its laws on an arbitrary basis. Mankins v. Paxton (Mar. 20, 2001), Franklin App. No. 00AP-1152, unreported, citing Harper v. Virginia State Bd. of Elections (1966), 383 U.S. 663, 681. Plaintiff contends that he was treated differently than those persons who were placed in the higher pay grade based solely upon his age.
The evidence before the trial court is insufficient to establish a violation of Section 1983 with regard to plaintiff's equal protection claims as to the job abolishment/reclassification issue. Although plaintiff asserts in his complaint that Dublin's reorganization plan constitutes a policy that discriminates against him on the basis of age, he fails to set forth sufficient facts to support such an allegation. Plaintiff admits that Dublin has a right to direct and implement the reorganization and reclassification of its employees. In addition, plaintiff denies that there was any malicious intent by either Dublin or its city officials when reorganizing and reclassifying his job and pay grade. Plaintiff further admits to having no evidence to indicate that any of the decisions made by city officials with regard to the reclassification of his job were made with the intent to discriminate against him because of his age. Indeed, plaintiff admits in his brief that "[d]efendant's reclassification scheme was age and gender neutral."
(Plaintiff's brief at 15.) Plaintiff has failed to offer any evidence establishing that Dublin had a policy or custom of intentionally discriminating against its employees on the basis of age in the area of job placement, transfer, promotion, demotion or compensation, or of tolerating such misconduct prior to its reclassification in 1996. Plaintiff merely asserts a single, isolated incident of alleged constitutional misconduct which, standing alone, is insufficient to establish a government custom. Miller, supra, citing City of Oklahoma City v. Tuttle (1985), 471 U.S. 808, 824. In short, plaintiff has failed to set forth any facts which could be construed to demonstrate that Dublin's actions in reorganizing its job classification and compensation structure and in abolishing plaintiff's former position and reclassifying him to a different position and pay grade was due to "an established practice, policy or custom" of discriminating against persons on the basis of age.
As to his claim regarding defendants' enforcement of the sick leave policy, plaintiff contends that his equal protection rights were violated because he was treated differently than similarly situated employees; i.e., he was asked to provide medical certification verifying his illness when no such request was made of a female employee. Defendants presented evidence that the female employee was not required to present medical certification verifying her requests for sick leave because, unlike plaintiff, she had been approved for medical leave under the Family Medical Leave Act ("FMLA"). Plaintiff admitted in his deposition testimony that he rejected the opportunity to apply for FMLA approval.
Plaintiff acknowledges Dublin's ability to oversee and monitor abuses of sick leave and admits that the sick leave policy gives the city manager or his designees discretionary authority to request that an employee verify an illness, including the provision of medical certification, if sick leave abuse is suspected. Defendants presented evidence that the impetus for the request that plaintiff submit medical certification verifying his illnesses was their suspicion that plaintiff had been abusing sick leave. As noted previously, plaintiff's allegation of a single, isolated incident of alleged constitutional misconduct is insufficient to establish a governmental custom. Plaintiff fails to provide any evidence of an official policy or custom by Dublin which discriminated against plaintiff or any other employee on the basis of gender in requiring proof of medical certification when sick leave abuse is suspected. In short, plaintiff has failed to set forth any facts which could be construed to demonstrate that Dublin's actions in requiring plaintiff to provide medical certification verifying his illnesses was due to an established practice, policy or custom of discriminating against persons based upon gender. Accordingly, we cannot find that the trial court erred in determining that defendants are entitled to judgment as a matter of law on plaintiff's Section 1983 claims.
Plaintiff next contends that the trial court erred in granting summary judgment on his federal and state claims for gender and age discrimination. Under Title VII, it is unlawful for an employer "* * * to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" Section 2000e-2(a)(1), Title 42, U.S.Code. The ADEA provides that it is unlawful for an employer: "(1) to * * * discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or] (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age * * * [.]" Section 623(A)(1) and (2), Title 29, U.S.Code. Ohio's general anti-discrimination statute, R.C. 4112.02(A), defines as an "unlawful discriminatory practice" an employer's "discriminat[ion] against [any] person with respect to * * * terms, conditions, or privileges of employment, or another matter directly or indirectly related to employment," because of the "* * * [person's] sex * * * [or] age[.]"
Whether a plaintiff's claims are brought pursuant to Title VII, the ADEA, or R.C. 4112.02, federal case law interpreting Title VII is generally applicable. Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm. (1991), 61 Ohio St.3d 607, 609.
Pursuant to Title VII jurisprudence, a plaintiff has the initial burden of establishing a prima facie case of discrimination. Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 253, citing McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802. The establishment of a prima facie case gives rise to a reciprocal burden on the part of the employer "to articulate some legitimate, nondiscriminatory reason" for its action. Id. If the employer carries its burden, the plaintiff must then be afforded "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Id.
To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent. Gismondi v. M T Mortgage Corp. (Apr. 13, 1999), Franklin App. No. 98AP-584, unreported. Discriminatory intent may be proven by either direct or indirect evidence. Id. A plaintiff may establish a prima facie case of discrimination directly by presenting evidence of any nature to show that the adverse employment action taken by the employer was more likely than not motivated by discriminatory intent. Id., citing Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 583.
A plaintiff may also establish a prima face case of discrimination indirectly upon application of the analytical framework established by the United States Supreme Court in McDonnell Douglas, supra. Id. Accordingly, in the absence of direct evidence of discrimination, a plaintiff may raise an inference of discriminatory intent by establishing that: (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position held; and (4) comparable, nonprotected persons were treated more favorably. Goad v. Sterling Commerce, Inc. (June 13, 2000), Franklin App. No. 99AP-321, unreported, following McDonnell Douglas. To establish that a "comparable non-protected person" was treated more favorably, the plaintiff "must show that the `comparabl[e]' [was] similarly-situated in all respects." Mitchell v. Toledo Hosp. (C.A.6, 1992), 964 F.2d 577, 582. The "respects" in which the "comparabl[e]" must be "similarly-situated" depend on "the factual context in which the * * * case arose[.]" Ercegovich v. Goodyear Tire Rubber Co. (C.A.6, 1992), 154 F.3d 344, 352. Thus, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered `similarly-situated; rather, * * * the plaintiff and the employee with whom the plaintiff seeks to compare himself * * * must be similar in `all of the relevant aspects.'" Id. at 352, quoting Pierce v. Commonwealth Life. Ins. Co. (C.A.6, 1994),40 F.3d 796, 802. "[T]he individuals with whom the plaintiff seeks to compare * * * [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. at 352, quoting Mitchell, supra, at 583.
Plaintiff contends that he was the subject of gender discrimination on the sole ground that, unlike his female co-worker, he was required to produce medical certification justifying use of sick leave. Upon consideration of the evidence presented in the instant case, plaintiff has failed to establish a prima facie case of gender discrimination. In his deposition testimony, plaintiff admits that he has no direct evidence, i.e., documentation or witnesses, establishing discriminatory intent by defendants on the basis of gender. (Plaintiff's depo. at 93.) Further, with regard to indirect evidence, defendants presented evidence establishing that plaintiff and the female employee alleged to have received favorable treatment were not "similarly- situated" in all "relevant aspects" and that mitigating circumstances existed to distinguish defendants' treatment of the female employee from their treatment of plaintiff. As noted under our resolution of plaintiff's Section 1983 claim, special arrangements had been made under the FMLA with regard to the female employee's medical absences. Defendants established that plaintiff was provided the opportunity to apply for medical leave under the FMLA, but refused to complete the paperwork. Accordingly, the evidence does not support a finding that plaintiff was denied a benefit afforded to a "similarly-situated" employee based upon gender; thus, a prima facie case cannot be established.
Further, even if a prima face case of gender discrimination could be established, defendants have set forth evidence demonstrating a legitimate, nondiscriminatory reason for their actions. Defendants' requests for medical certification of plaintiff's illnesses were justified pursuant to Section 8.04 of Dublin's "Code of Personnel Practices and Procedures." While Section 8.04 requires an employee to submit medical certification verifying an illness when more than two consecutive days of sick leave are requested, it also permits the supervisor to request medical certification to prevent the abuse of sick leave and is silent as to the length of the absence.[5] The evidence establishes that there was concern among plaintiff's supervisors that plaintiff was abusing sick leave. Accordingly, the request for medical certification verifying plaintiff's illnesses was proper within the parameters of the sick leave policy set forth in the personnel handbook. Although plaintiff concedes that under Section 8.04 supervisors have the right to question sick leave abuses, he argues that he could not be subject to the discretion of the sick leave policy because he had never been counseled and/or disciplined for abuse of sick leave. (Plaintiff's 4/5/00 supplemental affidavit.) However, our reading of Section 8.04 reveals no requirement that an employee must be counseled and/or disciplined for an abuse of sick leave prior to a supervisor requesting medical certification in order to prevent sick leave abuse, and plaintiff has failed to offer any evidence establishing otherwise.
Defendants having set forth a legitimate nondiscriminatory reason for requiring medical certification, the burden then shifted to plaintiff to demonstrate that the reason articulated by defendants was a mere pretext for discrimination. Upon review of the record, we find no evidence to support a finding that defendants' legitimate reason was in any way a pretext for discrimination. Accordingly, even drawing all inferences from the facts in favor of plaintiff, we find that plaintiff has failed to present specific facts demonstrating there is a genuine issue remaining for trial. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's gender discrimination claim under Title VII and R.C. 4112.02.
Plaintiff next contends that he was the subject of age discrimination in violation of the ADEA and R.C. 4112.02[6] when his job duties were modified in December 1993 and he was relieved of his supervisory duties over the project inspectors. Plaintiff contends that this action was the first in a series of steps which ultimately resulted in his job being downgraded to engineering assistant as part of the job reclassification and compensation study conducted in 1996. Plaintiff further contends that despite being qualified, he was not placed in one of the five project inspector positions created under the new structure. Plaintiff contends that the persons placed in those positions were younger than forty years of age and were former subordinates of plaintiff. Plaintiff maintains that the project engineers received job benefits, including salary increases and overtime pay, which were denied to plaintiff in his position as engineering assistant. Plaintiff further contends that Bowman often called him "Jurassic Clark" in reference to plaintiff being an "old fossil." (Plaintiff's 4/5/00 supplemental affidavit.)
Relying on the authority of Browning v. Pendleton (C.A.6, 1989),869 F.2d 989, the trial court determined that plaintiff's state and federal age discrimination claims were barred by the two-year statute of limitations set forth in R.C. 2305.10. We find Browning inapplicable to the instant case, however, as it dealt solely with the question of the appropriate statute of limitations for actions arising in Ohio under Section 1983, Title 42, U.S. Code, not the ADEA.
Plaintiff's federal age discrimination claim is barred, however, under the ADEA. Section 626(e), Title 29, U.S. Code states, in pertinent part that: "* * * If a charge filed with the [EEOC] under this chapter is dismissed * * * the [EEOC] shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title against the respondent named in the [EEOC] charge within 90 days after the date of the receipt of such notice." As noted previously, plaintiff attached to his amended complaint a copy of the November 20, 1998 EEOC notice dismissing his administrative charge. The notice advised plaintiff of his right to file a lawsuit under federal law in either state or federal court and that the lawsuit must be filed within ninety days of receipt of the notice; otherwise the right to sue under federal law would be lost. (Exhibit 1 attached to plaintiff's amended complaint.) Pursuant to Section 626(E), Title 29, U.S. Code, plaintiff's civil action should have been filed within ninety days after the dismissal notice was received. Plaintiff did not file his amended complaint alleging age discrimination under the ADEA until April 20, 1999. Accordingly, plaintiff's ADEA claim is time-barred.
Turning to plaintiff's state age discrimination claim, we find that it is barred by R.C. Chapter 4112. Plaintiff acknowledges that he filed an age discrimination claim with the EEOC. The filing of a claim with the EEOC constitutes a filing with the Ohio Civil Rights Commission. Schwartz v. Comcorp, Inc. (1993), 91 Ohio App.3d 639, 647; Williams v. Rayle Coal Co. (Sept. 19, 1997), Belmont App. No. 96-BA-42, unreported. As noted by the Supreme Court of Ohio in Smith v. Friendship Village of Dublin (2001), 92 Ohio St.3d 503, 506:
 R.C. 4112.02(N) provides that "[a]n aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age * * * by instituting a civil action." An individual may also file an age discrimination charge with the [Ohio Civil Rights] [C]ommission pursuant to R.C. 4112.05(B)(1). However, the General Assembly has specifically provided that individuals alleging age discrimination must choose between an administrative or judicial action. R.C. 4112.08 states that "any person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02
of the Revised Code."
 These provisions relating to age discrimination demonstrate that the General Assembly was aware that individuals might attempt to commence both administrative and judicial proceedings pursuant to R.C. Chapter 4112. So, in clear language, the General Assembly expressed its intent that an election must be made. * * *
Applying Smith, plaintiff is statutorily precluded from pursuing a civil judicial remedy pursuant to R.C. Chapter 4112.
We next consider plaintiff's claim for handicap discrimination. Plaintiff contends that defendants discriminated against him based upon his handicap, fibromyalgia, by requiring him to provide medical certification to justify the use of sick leave in February and August 1998.
In Ohio, an employer is prohibited from discriminating against an employee due to an employee's handicap. R.C. 4112.02. "Handicap" is defined as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of carrying for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). Like an age or gender discrimination case, a plaintiff claiming handicap (or perceived handicap) discrimination can prove a prima facie case through direct evidence, or through indirect or circumstantial evidence. Under the indirect method of proof, a plaintiff must establish that: (1) he or she is handicapped (or is perceived to be handicapped); (2) an adverse employment action is taken by the defendant because of the plaintiff's handicap (or perceived handicap); and (3) the plaintiff was able to safely and substantially perform the essential functions of the job (with reasonable accommodations if the plaintiff really is handicapped). Degnan v. Goodwill Industries of Toledo (1995),104 Ohio App.3d 589, 595.
Upon review of the record, we find no evidence to establish a genuine issue of material fact regarding plaintiff's handicap discrimination claim. No evidence establishes that defendants discriminated against plaintiff on the basis of his fibromyalgia in requiring him to provide medical certification justifying his use of sick leave. Plaintiff admits in his deposition that he has no evidence to support a finding that the alleged adverse employment actions were taken against him due to the fact that he suffers from fibromyalgia. (Plaintiff's 8/31/00 depo. at 45.)
Further, even if plaintiff had established a prima facie case of handicap discrimination, summary judgment would be warranted for the additional reason that defendants provided a legitimate, nondiscriminatory reason for requiring plaintiff to provide medical certification justifying his use of sick leave and ultimately denying his request when he did not provide it. Plaintiff has provided no evidence that the proffered reason was a pretext for impermissible discrimination.
Accordingly, even drawing all inferences from the facts in favor of plaintiff, we find that plaintiff has failed to present specific facts demonstrating that there is a genuine issue remaining for trial. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's handicap discrimination claim under R.C. 4112.02.
Finally, plaintiff contends that the trial court improperly granted summary judgment on his claim for wrongful retaliation. Under R.C.4112.02(I), it is an unlawful discriminatory practice:
 For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in a any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.
In order to support his claim of retaliatory conduct, plaintiff must establish: (1) that [he] engaged in protected activity; (2) that defendants knew of plaintiff's participation in the protected activity; (3) that [he] was subjected to an adverse employment action; and (4) that a causal link exists between the protected activity and the adverse action. Chandler v. Empire Chemical, Inc. (1994), 99 Ohio App.3d 396,402. If the plaintiff successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for the action. Id. If the defendant carries that burden, the plaintiff must then demonstrate that the articulated reason was merely a pretext for discrimination. Id.
Initially, we note that the trial court granted summary judgment on an improper basis. The trial court determined that plaintiff's claim was based upon an assertion that defendants retaliated against him because of his illness, fibromyalgia. The trial court found that illness was not a "protected activity" contemplated by R.C. 4112.02(I) and, thus, plaintiff was unable to establish a claim for retaliation.
Upon review of plaintiff's second amended complaint and his argument on appeal, we find that his claim is actually based upon an assertion that defendants reclassified his position and denied his sick leave requests in retaliation for him having filed a complaint with the EEOC. However, we find that plaintiff has failed to demonstrate a prima facie case for retaliatory conduct. Although filing a discrimination charge with the EEOC clearly constitutes a "protected activity" under R.C. 4112.02(I), plaintiff has not set forth specific facts demonstrating that his sick leave requests were denied or that he was reclassified to the engineering assistant position because he filed discrimination charges with the EEOC. Indeed, the adverse employment actions alleged by plaintiff to have resulted from his EEOC filing actually occurred prior to plaintiff filing his EEOC claim and were the impetus for such filing. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's retaliation claim.
For the foregoing reasons, plaintiff's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
LAZARUS and McCORMAC, JJ., concur.
 McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Ohio's anti-discrimination statutes were amended March 17, 2000, to refer to "disability" rather than "handicap." As both plaintiff and defendants utilize the term "handicap" throughout their briefs, we will do likewise.
[2] As noted previously, plaintiff's complaint also sets forth an allegation that defendants' actions violated Section 1981, Title 42, U.S. Code, which states in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every state or territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the securities of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and executions of every kind, and to no other." The trial court found that defendants were entitled to judgment as a matter of law on plaintiff's Section 1981, Title 42, U.S. Code claim based upon plaintiff's admission in his deposition that he did not believe that defendants discriminated against him based upon his race (Caucasian). (Plaintiff's depo. at 148.) Plaintiff has not challenged the trial court's finding on appeal. In fact, in his brief, plaintiff concedes that he "has failed to establish a factual basis for the [race discrimination] claim * * *." (Plaintiff's brief at 4.)
[3] That section provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
[4] Plaintiff also alleged under Section 1983 that he had been denied due process of law in violation of the Fourteenth Amendment on the ground that he had not had the benefit of either a pre- or post-deprivation hearing in the job abolishment/reclassification process. The trial court determined that defendants were entitled to judgment as a matter of law on plaintiff's due process claim, and plaintiff has not challenged this finding on appeal. Accordingly, we do not address this issue.
[5] Section 8.04 of Dublin's "Code of Personnel Practices and Procedures" provides, in pertinent part: "In the event an employee requests sick leave for a period of longer than two (2) consecutive days, or for the day immediately preceding or following a holiday, he/she may be required by his/her supervisor to submit a doctor's certificate verifying the illness and justifying the necessity of the absence. If the supervisor determines that an employee's use of sick leave is not justified, the supervisor shall have the authority to charge the absent time to the employee's vacation or sick leave balance or to record the absent time as leave without pay. The City Manager, assisted by all supervisory personnel, shall be responsible for preventing abuses of sick leave. Sick leave shall not be considered leave time which an employee may use at his discretion for personal business. The employer may required [sic] medical proof of the necessity of said sick leave, in which event the involved employee shall be required to produce a statement from a medical doctor certifying to the necessity of such absence. If an employee is found to have abused this sick leave policy provision, he shall be subject to disciplinary action, including possible suspension or dismissal."
[6] Protection under both the ADEA and R.C. Chapter 4112 extends to persons age forty and older. Section 631, Title 29, U.S.Code; R.C. 4112.01(A)(14).